## AMERICAN BANANA CO. v. UNITED FRUIT CO.

### (Circuit Court, S. D. New York.   March 4, 1908.)

1. EVIDENCE—OFFICIAL DOCUMENTS—POLITICAL .QUESTIONS.

In a suit involving complainant's right to certain land in Costa Rico of which complainant had been deprived by that government at the alleged instigation of defendant, a certified copy of a letter written by the United States Secretary of State with reference to Costa Rico's jurisdiction over the territory, which the United States claimed belonged to Panama, was admissible as an official document constituting a statement of the position of the United States on a political, nonjudicial question.

2. INTERNATIONAL LAW—RIGHTS OF CITIZEN—GOVERNMENTAL TORTS—DAMAGES.

Where plaintiff, a corporation of the United States, was ejected from certain land and other property over which the government of Costa Rico ·was exercising de facto authority by soldiers and officers of such government, whose acts were subsequently ratified by the government, plaintiff could not maintain a civil suit in the United States against defendant therefor on the ground that such governmental acts were inspired by defendant, since there was but one tort, and, as the government of Costa Rico could not be sued, no action could be maintained against defendant.

3. SAME—DAMAGES—PROSPECTIVE PROFITS.

Where, in an action for damages for ejecting plaintiff from a plantation in Costa Rico, the court could not give judgment on the validity of the original taking of plaintiff's plantation because it was a governmental act, it could not award damages for the loss of prospective profits resulting from such taking.

4. MONOPOLIES—SHERMAN LAW—DEPRIVATION OF PROFITS.

Sherman Act, Act July 2, 1890, c. 647, § 7, 26 Stat. 210 (U. S. Comp. St. 1901, p. 3202), authorizing recovery of treble damages, accruing through an unlawful combination in restraint of interstate and foreign commerce, gives no right of action to one who is not deprived of his existing profits, trade, or commerce by the formation or, action of an unlawful combination or monopoly, but is merely prevented from embarking on a new enterprise by the threatening aspect of an already existing monopoly or combination.

5. SAME—ACTS IN FOREIGN COUNTRIES.

That the banana market of Central America or some portions thereof has been closed to plaintiff because defendant offered higher prices to producers than did any one else, and so obtained long-term contracts for the exclusive purchase of the producers' product, did not constitute a violation of the Sherman act prohibiting combinations, monopolies, etc.

6. SAME—ENTICEMENT OF EMPLOYÉS.

That defendant had enticed or sought to entice away plaintiff's employés and to oppress such of defendant's own employés as presumed to buy stock in plaintiff company, its business rival, did not of itself constitute a violation of the Sherman act, prohibiting combinations and monopolies, so as to entitle plaintiff to recover damages on that ground alone.

**7. CARRIERS—DUTY TO FURNISH TRANSPORTATION.**
Where plaintiff sought to establish his banana business in Central America, and expended considerable money in his plant, it was engaged in foreign commerce when it began to move men, material, and supplies to and from the United States and Central American ports in furtherance of its business, and was therefore entitled to compel defendant to furnish transportation facilities on the same terms that defendant furnished such facilities to others.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 3, p. 2883.]

At Law. This cause, brought under section 7 of the Sherman Act (Act July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202]), having been called and a jury impaneled, defendant moved to dismiss on the pleadings.

Wheeler, Cortis & Haight, Everett P. Wheeler, and Horace E. Deming, for plaintiff.

Strong & Cadwalader, Moorfield Storey, and Henry W. Taft, for defendant.

HOUGH, District Judge. For the purposes of this motion it will be assumed that the allegations of the complaint show the following facts to be either well pleaded or capable of judicial cognizance: In June, 1904, there existed in the United States a combination in restraint of trade or commerce in bananas with foreign nations, and defendant was an active party in and to such combination. At the same time defendant was either monopolizing or attempting to monopolize trade or commerce in bananas with foreign nations. By these assumptions it is not intended to intimate any opinion as to the sufficiency of all the allegations in respect of combination or monopoly. On March 30, 1899 (the alleged date of the organization of defendant), and continuously since that time, the plaintiff has been a corporation duly organized and existing under the laws of Alabama, and formed for the purpose of importing bananas into the United States from Central and South America; this is the only business of the plaintiff shown in the complaint. In June, 1904, one McConnell was in peaceable possession of a certain plantation, which was and is wholly situated within the boundaries of the Republic of Panama, as previously delimited by the arbitration of President Loubet of France. Prior to June, 1904, plaintiff had not actually engaged in the banana business, or any productive business whatever. In that month and year it acquired McConnell's rights to his plantation, as also his right to construct and intention to build a railway, to bring the produce of said plantation to tide water. At that time McConnell had a grant or concession from the Republic of Panama or its predecessor sovereign, to construct said railway, which concession was assignable and actually assigned. Later in 1904 the Executive Department of the government of Costa Rico, acting through officials (either military or civil) and soldiers in its service, forcibly ejected plaintiff from the plantation in question, or the most important portion thereof, and seized vi et armis plaintiff's personal property situated there or thereabouts, including especially the material for the construction of the aforesaid

railroad. Such ejection of plaintiff from the real estate in question, and such seizure of personalty was perpetrated by the Costa Rican officials and soldiers aforesaid at the instigation, suggestion, and procurement of defendant, and for the purpose of preventing plaintiff from reaping the fruits of its investment in land and personalty, and in order to prevent it from harvesting bananas from its plantation, and transporting the same to the United States in competition with defendant's own importations. Whether or not an order for the seizure aforesaid was given by the supreme governmental authority of Costa Rico before seizure made, the conduct of said soldiers and officials was approved and ratified by the government of Costa Rico, and the seizure and occupation aforesaid continued by the authority of said government down to the time of the beginning of this suit.

Before the transfer of the plantation in question to plaintiff, a certain action had been begun in a court of Costa Rico seeking to establish title to said plantation, or to the most important portion thereof, in one Astua, a citizen of Costa Rico. In that suit such proceedings were had that after said transfer of the said plantation a judgment or decree was entered declaring title to be in said Astua. Such judicial proceedings were taken at the instigation or for the benefit of this defendant with the purpose of preventing plaintiff from gathering bananas from the land in question, and exporting them to the United States in competition with defendant's imports, and, shortly after said decree passed Astua's title was transferred to a corporation allied with and controlled by defendant, and identified with the unlawful combination and monopoly aforesaid. Said proceedings of the civil or military officials of Costa Rico, and of the soldiers of that government and of the court thereof, were taken in pursuance of an asserted right of sovereignty over the plantation in question, or the principal portion thereof, and over the land on which the plaintiff's personal property aforesaid was physically situated; and such assertion of sovereignty so as aforesaid made is irreconcilable with said delimination of boundaries between Panama and Costa Rico made by President Loubet in pursuance of an international arbitration agreement. Despite protests from the Department of State of the United States, made to the government of the Republic of Panama, Costa Rico down to the time of the beginning of this suit maintained de facto jurisdiction and sovereignty over the plantation in question and the land on which the seizure of said personal property was made. By reason of the facts so assumed for the purposes of this motion, plaintiff has never exported, gathered, cut, or harvested any bananas from the plantation in question, and has never as matter of fact at any time entered upon or engaged in trade or commerce in bananas. Both Costa Rico and Panama are sovereign independent nations, and were so at all the times in the complaint mentioned. The action of Costa Rico constituted an invasion of the territorial rights of Panama—in which invasion, however, Panama has acquiesced down to the time of the beginning of this action, and the fact of such acquiescence in the de facto sovereignty of Costa Rico over the premises in question has been recognized by the Department of State of the United States.

For the purpose of preventing competition in the exportation of bananas from Costa Rico and Panama the defendant, by outbidding all other competitors, has secured long-term contracts with most, if not all, of the producers of this fruit in that region. Defendant has also caused to be established a transportation line between ports of the United States and the region where this plantation lies. Such transportation line holds itself out as a common carrier, but has refused to accept from this plaintiff lawful merchandise, and when it did not so refuse charged the plaintiff higher rates for its service as common carrier than it charged other persons and corporations similarly situated; and, finally, defendant has sought to cripple and embarrass plaintiff in its attempted or intended business operations by enticing away its employés and threatening to discharge from its own service such of its workmen as became interested financially in plaintiff's enterprise. I believe the foregoing constitutes an interpretation of the complaint as favorable to the plaintiff as could be asked upon a general demurrer.

In arriving at the foregoing statement of plaintiff's position, I have examined the certified copy produced of Secretary Root's letter dated April 16, 1906, being of the opinion that this official document constitutes a statement of the position of our own government upon a political and nonjudicial question, and is therefore open to judicial cognizance within Jones v. United States, 137 U. S. 202, 11 Sup. Ct. 80, 34 L. Ed. 691, approved in Paquete Habana, 175 U. S. 696, 20 Sup. Ct. 290, 44 L. Ed. 320. The communications from Governor Magoon also handed up at the hearing have not been regarded, as they contain no more than information concerning the attitude of foreign governments which might or might not be accepted by our own Secretary of State.

1. The important question of law presented by the above statement is whether any damages can be recovered or any action brought in this court for the ejection of plaintiff from its plantation and the seizure of its personal property. Plaintiff asserts as the first step in establishing its demands that this court must hold that the property was in Panama; that being established, the seizure and ejection becomes as unauthorized as the acts of a sheriff outside his bailiwick when armed only with local process; and it follows that defendant as a joint tort-feasor is liable equally with the offending Costa Ricans. Let it be assumed that a tort was committed; that such tort is within the purview of section 7 of the Sherman Act (Act July 2, 1890, c. 647, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3202]), that both this defendant and the Costa Rican officials would be liable to civil suits were such tortious act committed in the United States, and that the cause of action is transitory—the inquiry still remains, who actually deprived plaintiff of its property? The answer is clear—the Republic of Costa Rico, by either originally directing or subsequently ratifying the acts of certain executive officers. The ratification is equivalent to prior authorization, on which point Buron v. Denman, 2 Ex. 167, is sufficient authority. This case was not overruled or doubted in Baird v. Walker [L. R. 1892] App. Cases, 491. The sole question in this later judgment was whether an officer of the crown could by

virtue of some treaty obligation entered into after another subject acquired property rights destroy such fellow subject's property without being answerable therefor. If the act complained of was done by Costa Rico, it is of no moment that the defendant and that republic were joint tort-feasors. There was but one tort, and if one offender can be sued, it is of the essence of the doctrine that the other must be equally suable. But neither Costa Rico nor its officers could be brought into our courts, for reasons fully and forcibly set forth by Wallace, J., in Underhill v. Hernandez, 65 Fed. 581, 13 C. C. A. 51, 38 L. R. A. 405, affirmed 168 U. S. 250, 18 Sup. Ct. 83, 42 L. Ed. 456.

No opinion is here expressed as to whether the cause of action be local or not, or whether within the reasonable interpretation of section 7 the act of seizure was "anything forbidden or declared to be unlawful" by the Sherman act. The case last cited renders the plaintiff's claim untenable by civil action in any American court, and on grounds of the highest public policy. It is impossible to adjudicate this matter without sitting in judgment on the right of Costa Rico to do what was done. The defendant's malice, intention, or expected profit is no more important than are similar considerations in an action for false arrest—before the illegality of the arrest be demonstrated. There, as here, it is of the essence of the court's jurisdictional power to determine the validity and legality of the governmental action out of which the suit grows; and this court has no power to sit in judgment on the validity or legality of the act of any sovereign independent nation.

2. The complainant specifically demands as damages prospective profits—profits that would have flowed from the uninterrupted enjoyment of its plantation and railway, and to be obtained by harvesting (in years after 1904) its ripened crops, exporting the same to the United States, and there selling bananas without the monopolistic oppression or competition of defendant. If this court cannot give judgment on the validity of the original taking of the plantation, it certainly cannot award damages for the result of the taking. But apart from that difficulty, it appears that never did plaintiff enjoy or possess any trade or commerce in bananas from the plantation in question; and, remembering that this is an action under the Sherman law, I remain of the opinion that that statute gives no right of action to one who is not deprived of his existing profits, trade, or commerce by the formation or action of an unlawful combination or monopoly, but merely prevented from embarking upon a new enterprise by the threatening aspect of an already existing monopoly or combination. Thomson v. Union Castle S. S. Co. (C. C.) 149 Fed. 933. And this is in accord with the general rule of speculative damages, especially in actions of tort. Dudley v. Briggs, 141 Mass. 582, 6 N. E. 717, 55 Am. Rep. 494. A citizen who finds a desirable avenue of business activity closed, for reasons obnoxious to the Sherman act may pray the department of justice to remove the unlawful obstruction; but he has suffered no actual pecuniary damage by being thwarted in what he would like to do at some future time.

3. Plaintiff further shows that the banana market of Central America, or some portion thereof, has been closed to it because defendant offered higher prices to producers than did any one else, and so obtained long contracts for the exclusive purchase of their product. I fail to see that this procedure, so beneficial to the producer is obnoxious to any section of the statute in question, even if the transactions occurred in the United States. It is still more difficult to conceive how a procedure which affects only bananas growing in Central America can be said to be affected by any law passed in pursuance of a power to regulate commerce with foreign nations and between the several states.

4. It is further shown that defendant has enticed or sought to entice away plaintiff's employés, and oppressed, or sought to oppress, such of its own employés as presumed to buy stock in plaintiff's company. These proceedings, however unfair and immoral, are not in and of themselves forbidden or declared to be unlawful by the Sherman act, and I do not think that a cause of action can be built upon these acts alone. I cannot regard it as more than a statement of evidence, which may well be used in explaining or proving the operation if not the formation of the alleged combination and monopoly.

5. Plaintiff's case finally rests upon the statement that defendant's transportation line, while acting as a common carrier, discriminated against plaintiff. The really serious question raised by this motion should in fairness have been long ago presented by demurrer, and on this motion plaintiff is entitled to great laxity in interpreting its pleadings. Regarded as an independent cause of action, I greatly doubt whether it is sufficiently pleaded. Yet it is true that although the plaintiff never harvested nor exported bananas, it had a business by way of preparation. It expended considerable money in its Central American plant; it was engaged in foreign commerce when it began to move men, material, and supplies to and from the United States and Central American ports; and if the plaintiff so elects I will hear testimony on this point.

This opinion is filed several days before March 9th in order that counsel may have an opportunity to consider it, and decide before the opening of court on that day whether, inasmuch as rulings in accordance herewith will exclude from the consideration of the jury the substantial case which plaintiff intended to present, it be not advisable to permit judgment to go for the defendant, that the correctness of the views here expressed may be tested in the appellate court promptly and at small expense.

NOTE.—Upon resumption of the trial on March 9th, plaintiff withdrew its claim for damages arising from defendant's refusal to transport goods at fair rates, and thereupon judgment dismissing the complaint passed in favor of defendant.