UNION PAC. R. CO. v. UPDIKE GRAIN CO. et al

(Circuit Court of Appeals, Eighth Circuit. April 18, 1910.)

Nos. 3,135–3,138.

*(Syllabus by the Court.)*

1. CARRIERS (§ 24*)—INTERSTATE COMMERCE ACT—CARRIERS MAY EXERCISE COMMON-LAW RIGHTS EXCEPT AS PROHIBITED THEREBY.

An interstate common carrier is free to exercise all his rights under the common law to the full extent to which such exercise has not been made unlawful by the interstate commerce act (Act June 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1909, p. 1149]).

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 24.*]

**2.** CARRIERS (§ 32*)—INTERSTATE COMMERCE ACT PROHIBITS UNDUE AND UN-
REASONABLE PREJUDICES AND DISADVANTAGES ONLY.

The interstate commerce act does not prohibit the giving of all prefer-
ences and advantages or the production of all prejudices and disad-
vantages. It prohibits only those that are undue and unreasonable.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 32.*]

**3.** CARRIERS (§ 32*)—UNJUST DISCRIMINATION AND UNDUE PREJUDICE—FACTS
—CONCLUSION.

The tariffs of the Union Pacific Railroad Company offered compensa-
tion for elevation of grain in transit on condition that cars delivered by
it loaded to elevators or connecting lines should be returned to it empty
within 48 hours after their delivery. The rules which governed the
switching and disposition of cars provided that foreign cars and cars
belonging to the companies which had a direct connection with the
switching territory should be delivered or sent to their owners so that
the complainants who were the owners of elevators upon railroad tracks
other than those of the Union Pacific Company could not possibly re-
turn such cars to that company after they were unloaded, while Peavey
& Co., which had an elevator upon the tracks of the Union Pacific Com-
pany, could and did deliver such cars back to that company immediately
after they were unloaded, and the Union Pacific Company paid it com-
pensation for elevating the grain unloaded from these cars, while it re-
fused to pay complainants any compensation for unloading cars of like
character.

*Held*, this course of proceeding wrought an unjust discrimination
against, and an undue prejudice to, the complainants which entitled them
to recover damages in reparation.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 32.*

What constitutes an unlawful preference or discrimination by a car-
rier under interstate commerce regulations, see note to Gamble-Robin-
son C. Co. v. Chicago & N. W. Ry. Co., 94 C. C. A. 230.]

**4.** CARRIERS (§ 32*)—UNJUST DISCRIMINATION—PAYMENT OF ELEVATION
CHARGES.

The complainants returned, more than 48 hours after their delivery
to connecting lines, certain cars, and the Union Pacific Company refused
to pay them compensation for elevating the grain out of these cars. The
delay in the return of these cars was not due to the Union Pacific Com-
pany, but to companies having connecting lines to whom these cars were
delivered by the Union Pacific Company by direction of the complainants
or of consignors to the complainants, and the Union Pacific Company
paid no elevation charges to Peavey & Co. on grain unloaded from cars
which were not returned to the Union Pacific Company within 48 hours.

*Held*, there was no unjust discrimination or undue prejudice in this
course of proceeding, and the complainants were not entitled to any dam-
ages because they received no compensation for elevation services in con-
nection with such cars.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 32.*]

In Error to the Circuit Court of the United States for the District of
Nebraska.

Actions by the Updike Grain Company, the Nebraska-Iowa Grain
Company, and the Crowell Lumber & Grain Company against the Un-
ion Pacific Railroad Company. Judgments for plaintiffs, and defend-
ant brings error against all of the plaintiffs in one writ and against
each plaintiff individually. Judgments reversed, unless defendants in
error remit certain portions of the damages allowed by the judgment.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexe

Edson Rich (F. C. Dillard and N. H. Loomis, on the brief), for plaintiff in error.

Edward P. Smith (Constantine J. Smyth, on the brief), for defendants in error.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

SANBORN, Circuit Judge. The Union Pacific Railroad Company sued out four writs of error to reverse a judgment against it in favor of the Updike Grain Company for $7,416.31, Nebraska-Iowa Grain Company for $2,760.71, and Crowell Lumber & Grain Company for $754.15. It sued out a writ against all the defendants in error and one against each of them because it was in doubt whether or not it could assail by the first writ the judgment in favor of each of the defendants in error. This judgment was the result of a suit brought by the three defendants in error under paragraph 3 of section 16 of the interstate commerce act (Act June 29, 1906, c. 3591, 34 Stat. 590 [U. S. Comp. St. Supp. 1909, p. 1160]), which provides that all parties in whose favor the Interstate Commerce Commission has awarded damages by a single order may be joined as plaintiffs in a suit to recover those damages. As in such a suit separate recoveries in favor of each plaintiff and against each defendant respectively may be secured by a single judgment, that judgment and every part of it may be challenged by a single writ of error to which all in interest are made parties. This case will therefore be considered upon the writ of error against all the defendants in error, and the writs against each of them respectively will be dismissed, without costs.

The commission awarded the damages that are the subject of this action because the Union Pacific Company had not paid to the defendants in error, which were corporations owning elevators at Omaha, the rates for the elevation of grain specified in its published tariffs between July 27, 1906, and June 29, 1908, while it had paid these rates for similar services to the owners of other elevators in that city. These tariffs provide that:

"To expedite the movement and to secure the prompt release and return of equipment an allowance of (1¼ cents prior and ¾ of a cent subsequent to June 1, 1907), will be made by the Union Pacific Railroad to the elevators performing the service on grain in car loads transferred by the elevators at Omaha," on the condition, among others, that "no allowance will be made when more than 48 hours elapse between time of delivery of loads by the Union Pacific to the elevator or connecting lines and the release and return of the empty cars to the Union Pacific."

The Union Pacific Company had been under a contract since 1899 to make an allowance of this character to Peavey & Co., a corporation which had built and was operating an elevator on the tracks of the Union Pacific Company at Council Bluffs, which is treated as a part of Omaha henceforth in this opinion, in reliance upon this agreement. The tariffs which offered this compensation for elevation and transfer to the owners of all elevators at Omaha which rendered the service had been made for the purpose of complying with a decision of the commission rendered April 9, 1907, to the effect that the Pacific Company

178 F.—15

would subject itself to the charge of an unjust discrimination unless it furnished elevation to shippers who could not use at Omaha the elevator of Peavey & Co. on the same terms which it gave to those who could do so. In re Allowances to Elevators, 12 Interst. Com. R. 85, 88. Subsequently and on June 29, 1908, the commission decided that the allowance or payment by the Pacific Company to Peavey & Co. of any compensation for the elevation and transfer in transit of grain which it shipped and owned was unlawful because it derived, or might derive, a commercial advantage from cleaning, clipping, mixing, grading, and inspecting the grain during its elevation, and because there was danger that such a practice might lead the parties to it to violate the prohibition of rebates and of unjust discrimination embodied in the interstate commerce act. In re Allowances to Elevators, 14 Interst. Com. Com'n R. 315, 316. It also held that all allowances and payments to owners and operators of elevators for elevation in transit were unlawful and must cease. Traffic Bureau Merchants' Exchange of St. Louis v. Chicago, Burlington & Quincy R. R. Co., 14 Interst. Com. Com'n R. 317. Thereupon it issued orders which forbade the continuance of such allowances and payments.

Elevation in transit consists in the unloading of the cars which bring the grain to the elevator and the loading of the grain into those which carry it away. The defendants in error were the owners and shippers of the grain, for the failure to pay for the elevation of which they have recovered damages, and also of the elevators with which they transferred it, and counsel for the Union Pacific Company insist that the payment of these damages is unlawful for the reasons which have been stated, and which induced the decisions and orders of the commission which condemned these allowances and payments in the cases of Peavey & Co. and the Traffic Bureau of St. Louis. But Peavey & Co. and others brought and prosecuted suits in equity to enjoin and set aside these orders. These suits have been heard by three of the circuit judges of this circuit, and they have decided that those orders were beyond the power of the commission, that the allowance or payment by a railroad company of reasonable compensation to the owner of an elevator for the elevation in transit of grain he ships or owns is not violative of the interstate commerce act, or of any other law, and that the payments and allowances offered in the tariffs of the Union Pacific Company which have been cited were reasonable and legal. The reasons for these conclusions are stated at considerable length in the opinion in those cases which meets the approval of this court, and it is deemed unnecessary to set them forth again here. F. H. Peavey & Company et al. v. Union Pacific Railroad Company et al. and Diffenbaugh et al. v. Interstate Commerce Commission (filed March, 1910) 176 Fed. 409. The basis of the decision in this case, therefore, is that it was lawful for the Union Pacific Company to make the allowances and payments offered in its schedules.

The elevators of the defendants in error were not located upon the tracks of the Union Pacific Company, and when cars came in over those tracks destined to these elevators that company delivered them to a connecting railroad company or to the Union Stockyards. Company, whose tracks connected with those of the railroad companies

which entered South Omaha, and one or both of these companies switched these cars to their respective elevator destinations. The regulations of the American Railway Association, which by consent of the companies, parties to this action, who were members of this organization, governed the handling of these cars, required each car received loaded in switching service to be confined to switching territory and to be returned when empty to its owner if that owner had a direct connection within the switching territory. Every connecting carrier had and exercised the right to retain in its possession its empty cars. A portion of the damages recovered below consisted of an amount equal to the charge for elevation on grain unloaded by the defendants in error from cars which belonged either to the company which performed the switching service or to a company which had a direct connection in the switching territory. These cars when empty were not and could not be transferred to the Union Pacific Company under the governing rules. They were retained by their owners, and counsel contend that no damages can be recovered for the failure to pay the elevation charges upon these cars because the tariffs declared that the condition of the payment for elevation was that the empty cars should be returned to the Union Pacific Company within 48 hours after their delivery to the connecting line. But the Union Pacific Company paid to Peavey & Co. the elevation charge on cars of this class delivered to its elevators. It is true that these cars were at the command of the Union Pacific Company empty, within 48 hours, because they were never delivered to any other carrier. Nevertheless, it was impossible for the defendants in error under the controlling rules to return cars of this class to the Union Pacific Company at any time, and the inevitable effect of the payment of the elevation charge on such cars to Peavey & Co. when the defendants in error could not secure it under the specifications of the tariffs was to give shippers in this class of cars through the elevators of Peavey & Co. a clear advantage of the amount of the elevation charge over shippers in cars of the same class through the elevators of the defendants in error. There was, therefore, no error in the opinions of the commission and of the court below that this difference in operation and payment constituted an unjust discrimination which entitled the defendants in error to damages in reparation.

For the same reason there was no error in allowing to the Updike Company for the failure of the Union Pacific Company to pay the elevation charge on grain unloaded from foreign cars; that is, from cars owned by companies which had no railroads into Omaha or South Omaha, such as the Pennsylvania Company, or the New York Central Company. Cars of this character were required by the rules of the association to be, and they were, when emptied, loaded by some route so that the home road would participate in the freight or loaded to an intermediate road in the direction of the home road. The result was that when these cars came to the elevator of the Updike Company from the Union Pacific Company and were unloaded the Updike Company could not return them to the Pacific Company. That company paid the elevation charge upon cars of this class to Peavey & Co., and its failure to pay it to the Updike Company wrought an unjust discrimina-

tion, on account of which the Updike Company was entitled to recover the damages which it sustained.

A portion of the damages recovered were on account of the failure of the Union Pacific Company to pay elevation charges on grain unloaded from cars which were returned to the Union Pacific Company more than 48 hours after they had been delivered to the connecting lines. The defendants in error returned 319 cars within the 48 hours and 222 cars after that time had elapsed. The condition of the payment of this elevation charge specified in the tariffs was that the cars should be returned within the 48 hours. The defendants in error returned 319 cars within that time, and for the elevation of the grain from those cars they have recovered, and are entitled to retain, their damages. But why should they receive damages for the failure of the Union Pacific Company to pay elevation charges on the 222 cars which were returned after the 48 hours had elapsed? Counsel say, because these cars were delayed by switching companies after they were delivered to them loaded, because the Union Pacific Company paid the switching charges to these connecting lines and collected them of the shippers, and because the railroad companies entering Omaha have adopted a rule to the effect that no demurrage shall be charged to the company which does the terminal switching for four days. The evidence, however, is that a car load of grain can be unloaded into an elevator in 30 minutes after it is properly placed, and that the defendants in error returned 319 cars within the 48 hours. It was not impossible, therefore, to return cars within the time specified in the tariffs. While it is true that the Union Pacific Company paid the connecting lines the switching charges upon these cars, it is also true that it incurred and paid these charges on the orders of the defendants in error, or on the orders of consignors of grain to their elevators, and that it subsequently collected these charges from the defendants in error. Generally, if not universally, the defendants in error were the purchasers and owners of the grain in the cars sent to their elevators, and either they ordered the Union Pacific Company to send these cars to their elevators, or those cars had been sent to the elevators from points of origin of the shipments. In either case the Union Pacific Company delivered them to the switching company by reason of the order of the owners or shippers of the grain. It paid the switching charges for, and then collected them of, the defendants in error. The legal result must be, and is, that the switching companies were in reality the servants of the elevator companies to switch the cars to and from their elevators. The defendants in error were the parties that desired and caused these cars to be sent from the Union Pacific railroad to their elevators. The Union Pacific Company had no interest in sending them there. Its interest was to retain, unload, and use them upon its own railroads.

The rule of the companies that no demurrage should be charged during four days to the switching company fixed the extreme limit beyond which cars carrying burdens of various kinds which must be unloaded by hand and with shovels, by carting load by load and in other ways which required much more time than the unloading of

grain, might be held without demurrage, and it is far from persuasive evidence that 48 hours was not ample time to switch and unload cars carrying grain.

The eastern terminus of the Union Pacific Company was at Council Bluffs, which, for the purposes of this case, is treated as a part of Omaha. A vast volume of grain from the fields ·of Nebraska and Kansas passes through Omaha to eastern cities each year, and by far the larger portion of it must be transported in a few months in the autumn and winter. The Union Pacific Company has the short haul of this grain. Other railroad companies whose rails reach from the grain fields west of the Missouri river through Omaha to eastern points are its constant competitors. If it permits its cars to go on east over the roads of other companies, it loses their use on its own lines when that use is most lucrative, and the grain within reach of it and of the companies having through lines is diverted from it and carried by the latter. The prompt unloading of its cars at its eastern terminus and their immediate return for new loads was, therefore, indispensable to its fair competition and reasonable participation in this transportation. It was to accomplish this result that the Union Pacific Company offered and paid the compensation for elevation in transit. Elevation of this nature is a part of transportation which railroad companies are required to furnish on request. 34 Stat. 584, § 1. They have the legal right either to furnish it themselves or to hire others to provide it. Since they have the right to employ others to provide elevation, they also have the indispensable right to prescribe the terms upon which they will make this employment, provided always those terms are neither unreasonable nor unjustly discriminatory. 34 Stat. 589, 590, § 15; Act Feb. 4, 1887, c. 104, § 3, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3155). The Pacific Company offered compensation for elevation at Omaha on condition only that the cars carrying the grain should be returned within 48 hours, to the end that it might have the full use of them on its own rails during the carrying season. The fact that the defendants in error returned 319 cars within this time, the fact that a car can be unloaded at an elevator in thirty minutes, the proximity of these elevators to the tracks upon which the Union Pacific Company delivered the cars to the switching company, and a review of all the evidence in this record has convinced that 48 hours was a reasonable time to allow for the unloading and return of these cars. The switching company was in reality the agent and servant of the defendants in error. It was serving them at their request and for their benefit, and they ultimately paid for the service. The Union Pacific Company therefore offered this compensation for elevation in transit upon the condition which has been named. A compliance with that condition was indispensable to the acceptance of that offer. The defendants in error failed to comply with it, and therefore they never became entitled to the compensation. No allowance or compensation was made to Peavey & Co. on cars not returned empty within the 48 hours, so that there was no unjust discrimination or undue prejudice here. And the defendants were not entitled to recover damages for the failure of the Union Pacific Company to pay them for the elevation

of grain out of cars which were returned without fault of the latter named company by them more than 48 hours after they were delivered by the Union Pacific Company to the connecting lines.

The judgment in favor of the Nebraska-Iowa Grain Company must be reversed accordingly, and the case between it and the Union Pacific Company must be remanded to the court below, unless within 60 days from the filing of this opinion it remits all of that judgment, except $1,612.51, and interest thereon at 6 per cent. per annum since July 22, 1907, and its costs of suit, and files in this court a certified copy of such remittitur, in which event the judgment in its favor for that amount may be affirmed.

The judgment in favor of the Updike Grain Company must be reversed, and the case between it and the Union Pacific Company must be remanded to the court below for a new trial, unless within 60 days from the filing of this opinion it remits all of the judgment in its favor, except $6,310.18, and interest thereon at 6 per cent. per annum since July 22, 1907, and its costs of suit, and files in this court a certified copy of such remittitur, in which event the judgment in its favor for that amount may be affirmed.

The judgment in favor of the Crowell Lumber & Grain Company must be reversed, and the case between it and the Union Pacific Company must be remanded to the court below for a new trial, unless within 60 days from the filing of this opinion it remits all of the judgment in its favor, except $314.11, and interest thereon at 6 per cent. per annum since July 22, 1907, and its costs of suit, and files in this court a certified copy of such remittitur, in which event the judgment in its favor for that amount may be affirmed, and it is so ordered.