ANDEAN TRADING CO. v. PACIFIC STEAM NAV. CO. et al.

(Circuit Court of Appeals, Second Circuit. January 14, 1920.)

No. 83.

1. SHIPPING ⊜132(3)—SHIP MUST SHOW CARGO DAMAGE WITHIN EXCEPTION IN BILL OF LADING.

The burden rests upon the ship to prove that damage to her cargo fell within an exception in the bill of lading.

2. SHIPPING ⊜124—LEAVING HATCHES OPEN NOT AN "ACT OF MANAGEMENT OF VESSEL," BUT "ACT IN CARE AND CUSTODY OF CARGO."

Leaving hatches open, for ventilation of cargo, through which water entered and damaged cargo, *held* not an "act in the management of the vessel," within Harter Act, § 3 (Comp. St. § 8031), but an "act in the care and custody of the cargo," for which the shipowner was responsible under section 1.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Andean Trading Company against the Pacific Steam Navigation Company and the Panama Railroad Company. Decree for respondents, and libelant appeals. Reversed.

Theodore L. Bailey, of New York City (O. S. Blinn, of New York City, of counsel), for appellant.

Burlingham, Veeder, Masten & Fearey and Richard Reid Rogers, all of New York City, for appellees.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. This libel was filed against the Pacific Steam Navigation Company and the Panama Railroad Company to recover for water damage to a shipment of hides in bales, June 30, 1915, on the Pacific Company's steamer Peru at Guayaquil, Ecuador, upon a through bill of lading to New York. The Pacific Company receipted for the bales in apparent good order and condition, and delivered them at Cristobal to the Railroad Company's steamer Ancon, which delivered some of the hides in bad condition at New York August 4, 1915. The damage was charged to be the result of negligence in stowing, caring for, and delivering the cargo.

[1] The libel was dismissed on consent as against the Pacific Company, and the Railroad Company, admitting that 784 of the hides were stained after being received by it, relies upon the exception in the bill of lading of dampness and sweat. The burden lay upon the defendant as a common carrier to prove that the damage fell within the exception in the bill of lading, which, as the District Judge has found, it failed to do. The Folmina, 212 U. S. 354, 29 Sup. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748; Herman v. Compagnie Générale, 242 Fed. 859, 155 C. C. A. 447.

It was not proved whether sea water or fresh water caused the damage. Sweat is the result of the condensation of moist atmosphere in the holds as a result of changes of temperature. On voyages from

Panama to New York in the summer there is very little sweat, and we agree with the trial judge that sweat could not account for the damage in this case. In answer to this the respondent relies upon a clause in the bill of lading reading:

"Negligence shall not be presumed against any carrier under this bill of lading, and no liability shall exist therefor without actual and affirmative proof thereof."

[2] But we think the libelant does not go upon the mere presumption of negligence. It has proved circumstantially that the water, whether sea water or rain water, must have got to the hides through the open hatches.

The District Judge found that the damage must have been caused by sea water coming through the open hatches, but that leaving them open was an act of management of the vessel, within section 3 of the Harter Act (Comp. St. §. 8031), and because the Railroad Company had exercised due diligence to make the vessel seaworthy it was not liable. Accordingly he dismissed the libel. Section 3 of the Harter Act must be read in connection with section 1 (Comp. St. § 8029), which prohibits any provision in the bill of lading from relieving owners of liability for damage arising from any fault or failure in proper loading stowage, custody, care, and proper delivery of cargo. For such negligence a common carrier cannot escape liability. The duty of proper care and custody continues after stowage of the cargo until delivery at destination. Acts of the master on the voyage, resulting in damage to cargo, may be either acts in the navigation and management of the vessel, under section 3, or in the care and custody of the cargo during the voyage, under section 1. For the first the owners are not liable, but for the latter they are.

The ventilators had all been removed, and the only way to ventilate the cargo was to leave the hatches open in fine weather. When near New York the steamer ran into an easterly gale, and had to be hove to for several hours. The act of opening and closing the hatches related, not to the ship, nor to the ship and cargo, though primarily to the ship. It related primarily, and indeed exclusively, to the cargo. Therefore it was not an act of management of the vessel. The Germanic, 124 Fed. 1, 59 C. C. A. 521; Id., 196 U. S. 589, 25 Sup. Ct. 317, 49 L. Ed. 610. It was not an act, to use the language of the court in Knott v. Botany Mills, 179 U. S. 69, 74, 21 Sup. Ct. 30, 32 (45 L. Ed. 90), "primarily connected with the navigation or the management of the vessel, and not with the cargo." The District Judge disapproved the decision in the Jean Bart (D. C.) 197 Fed. 1002, which we think correctly construes the Harter Act.

The decree is reversed.