## THE EDITH (two cases).

(Circuit Court of Appeals, Second Circuit. February 1, 1926.)

Nos. 174, 175.

**1. Shipping ⟨⟩136—Cases determined after Harter Act became effective must be considered as determined in light of policy therein announced (Act Feb. 13, 1893 [Comp. St. §§ 8029–8035]).**

Harter Act (Comp. St. §§ 8029–8035), though not retroactive, announced public policy, and hence decisions in causes heard after it became effective, though arising before its enactment, must be considered as determined in light of public policy so declared.

**2. Shipping ⟨⟩121(1).**

Warranty of seaworthiness is absolute, and covers latent defects, not ordinarily susceptible of detection.

**3. Shipping ⟨⟩132(6)—Actual seaworthiness or due diligence is question of fact, determinable by admiralty court on the evidence.**

When shipowner assumes burden of proving either actual seaworthiness or due diligence, a question of fact arises, which, in admiralty, court must, or may, decide for itself on the evidence.

**4. Shipping ⟨⟩141(2)—Placing and fastening tarpaulin over hatchway part of care of cargo within Harter Act, and liability cannot be contracted against (Act Feb. 13, 1893, §§ 1, 3 [Comp. St. §§ 8029, 8031]).**

Placing and fastening of tarpaulin over hatchway *held* part of care of cargo, within Harter Act, § 1 (Comp. St. § 8029), with reference to which clauses in bill of lading relieving of liability are invalid, and not a matter of the management of the ship, with respect to which due diligence relieves from liability under section 3 (Comp. St. § 8031).

**5. Shipping ⟨⟩141(2)—Failure to provide proper dunnage is fault in stowage, under Harter Act, and liability cannot be contracted against (Act Feb. 13, 1893, § 1 [Comp. St. § 8029]).**

Failure to provide proper dunnage to protect cargo of sugar *held* a fault in stowage, which, under Harter Act, § 1 (Comp. St. § 8029), could not be relieved against by provision in bill of lading.

**6. Shipping ⟨⟩141(3)—Ship held not to have encountered storm, constituting peril of sea, relieving from liability for sea water damage to sugar.**

Ship *held* not to have encountered any storm of such violence as to constitute a peril of the sea for a ship thoroughly seaworthy, properly equipped, and well found, excusing it from liability for damage to cargo of sugar from sea water, which entered through cargo ports and through hatchway, after fetching away of tarpaulin wedges.

**7. Shipping ⟨⟩121(1)—Due diligence in fastening in place cargo ports held not established.**

Due diligence in fastening in place cargo ports on side of vessel, rendering it seaworthy as respects sugar cargo juxtaposed to such port, *held* not established.

Appeals from the District Court of the United States for the Eastern District of New York.

Libel by the American Sugar Refining Company and the National Sugar Refining Company against the steamship Edith, her engines, etc.; the A. H. Bull Steamship Company, claimant. From decrees for respondent, libelants appeal. Reversed and remanded, with directions.

The libels were filed by owners of sugar cargo carried by the Edith from Porto Rico to New York in January, 1924.

The claims of the libel are for injury to the cargo, concerning which it was proven that it was received on board in apparent good order and condition, whereas on arrival a considerable portion thereof was wet or melted by sea water.

The Edith had three cargo ports on each side; they were large sliding doors, covering six holes in the ship's sides. The doors, when slid in place over the holes, were screw-bolted to the side of the ship, with rubber gaskets between door and side.

It is now admitted that the injury to this cargo was due to sea water which came through the side of the ship, because one or more of these side ports failed to keep tight, and to other sea water which came through one of the hatchways because the wedges that kept down the tarpaulin over the hatch covering loosened, the tarpaulin wholly or partly fetched away, and the sea water got into the wake of the hatch.

The cargo was carried under bills of lading which declared: "The carrier shall not be liable * * * for any loss * * * occasioned by * * * dangers or accidents of the sea or other waters * * * by sea water, wetting, rain, spray, frost," etc.

The defenses offered were the exceptions in the bill and the Harter Act (Comp. St. §§ 8029–8035).

The evidence as to the nature of the voyage will be considered in our opinion. The court below dismissed the libels, whereupon libelants appealed.

James K. Symmers and Barry, Wainwright, Thacher & Symmers, all of New York City, for appellants.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (L. De Grove

Potter and Robert E. Hill, both of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The treatment below of the uncontradicted facts presented seems to justify some restatement of legal principles relating to carriage of goods by sea.

[1, 2] The Harter Act (27 Stat. 445 [Comp. St. §§ 8029–8035]) was not retroactive, yet did announce the public policy of this country. The Energia, 66 F. 604, 13 C. C. A. 653. The events giving rise to The Edwin I. Morrison, 153 U. S. 199, 14 S. Ct. 823, 38 L. Ed. 688, and The Caledonia, 157 U. S. 124, 15 S. Ct. 537, 39 L. Ed. 644, arose before the act, but the causes were argued after it became law; wherefore it is fair to say that they announce the view taken by the highest court of the general maritime law in the light of public policy as legislatively stated. Result is that by the law maritime the warranty of seaworthiness is absolute and does cover "latent defects not ordinarily susceptible of detection."

The Carib Prince, 170 U. S. 655, 18 S. Ct. 753, 42 L. Ed. 1181, furnishes facts arising after the statute, and the highest court interpreted the statute to mean that the exercise of due diligence to make the ship seaworthy only served to relieve from errors, mistakes, or losses in respect of the matters enumerated in the third section of the statute; i. e. (so far as this cause is concerned), the management of the vessel and dangers—i. e., peril—of the sea.

This decision left the law about complaints concerning stowage and care of cargo and other matters enumerated in the first section of the act unchanged, except for the direction that clauses relieving of liability for error or fault in respect thereof were deprived of all validity.

The statute does not undertake to define or limit the word "seaworthiness," but for purposes of cargo claimants the next decision (The Silvia, 171 U. S. 462, 19 S. Ct. 7, 43 L. Ed. 241) made the important, though not novel, ruling that "the test of seaworthiness is whether the vessel is reasonably fit to carry the cargo which she had undertaken to transport." It obviously followed that the seaworthiness in respect of which due diligence was required was to be measured in considerable part by the kind of cargo to be laden.

[3] In the light of these decisions, this court gave judgment in The Sandfield, 92 F. 663, 34 C. C. A. 612, a case, like this, of sugar cargo injured by sea water. Compare that opinion with the later case of a cargo of hides similarly injured in The Citta di Palermo (D. C.) 226 F. 529, and the result is evident that, where a shipowner assumes the burden of proving either actual seaworthiness or due diligence (Bradley v. Lehigh Valley R. Co., 153 F. 350, 82 C. C. A. 426), a question of fact arises, which in admiralty every court must or may decide for itself upon the evidence.

We have at bar two classes of damage, both produced by sea water. In one water came through the place where the cargo port was bolted to the side of the ship, because the fit was not tight enough; and in the other it went down the hatchway because the tarpaulin fetched loose because the customary wedges did not hold. These two classes of damage *may* be considered from different angles.

[4] The first inquiry as to the damage in the wake of the hatch is whether the placing of a tarpaulin over the hatch cover is a part of the management of the ship or of the care and custody of cargo.

Leaving a hatch open for purposes of ventilation we have held to be a matter of care, and not of management. Andean, etc., Co. v. Pacific Co., 263 F. 559. A vessel without cargo in her hold, and with hatch covers on and bolted, is certainly as seaworthy in the general sense without a covering tarpaulin as she is with one. That protection is put on solely for cargo purposes, or at least to keep dry whatever may be in the hold. We therefore consider that the act of placing and fastening the tarpaulin was a part of the care of cargo; it was one of the matters referred to in the first section of the Harter Act (Comp. St. § 8029), and does not come within the excusing proviso of the third section thereof (Comp. St. § 8031).

[5] Stowage is another of the matters covered by the first section, and the furnishing of proper dunnage is a part of stowage. Failure to provide dunnage where reasonably necessary is a fault in stowage. The Oakley C. Curtis (D. C.) 285 F. 612, affirmed on this point (C. C. A.) 4 F.(2d) 979, a case wherein certiorari was denied (267 U. S. 599, 45 S. Ct. 354, 69 L. Ed. 807).

There is abundant evidence that on a winter voyage, with a cargo so heavy that a large fraction of the cargo ports was always submerged, some leakage was to be expected just where it occurred. Sugar is a cargo pe-

culiarly subject to sea water injury; not only loss, but complete destruction, ensues where any considerable quantity of water has access. No dunnage was here provided against a danger reasonably to be expected. This was a fault in stowage.

[6] There remains the inquiry whether the Edith was, in respect of her sugar cargo, seaworthy in fact. That she was not in respect of the sugar near the cargo ports the event showed, unless peril of the sea be shown, which would have overcome the resistance even of a seaworthy vessel.

On this point the case at bar is an excellent illustration of the very great importance of a ship's log. No one knows exactly when the water came through the cargo port gaskets, but it is exactly known when the damage under the hatch was done. On January 28th what is described by the ship's evidence as "a strong easterly gale, the seas coming from the eastward and washing over the ship very heavily," and as one of the worst storms in the master's experience, occurred. The same witness orally estimated the wind at 75 miles, or about 10 on the Beaufort scale. When asked whether anything extraordinary happened during this heavy weather, he replied: "The wedges washed out of the No. 5 hatch and the tarpaulin was washed partly off." This was the only physical injury done to the ship or her fittings; nothing was broken; no structural injury was received. But the ship's log of that day, from 4 a. m. to midnight, shows a wind rated as from a "moderate breeze" to a "strong northeast breeze," and the episode of the tarpaulin is thus covered: "11:30 p. m. found No. 5 hatch cover part open and slowed speed. 11:45 p. m., No. 5 hatch all secured and half speed."

On this record (of which the foregoing is a fair sample) we are asked to infer that the covering of the hatch was torn away by what is technically called "peril of the sea." Of this it seems to us sufficient to note that the weather was far within that testified to in The Rosalia, 264 F. 285, where excusing peril of the sea was denied. And the evidence herein may be compared with an earlier case, The Centurion, 68 F. 382, 15 C. C. A. 480, and with a later one, The Rosalie Hull (C. C. A.) 4 F.(2d) 985. We are obliged to conclude that the Edith did not encounter any storm of that extreme violence which has long been counted as excusing peril of the sea for a ship thoroughly seaworthy, properly equipped, and well found.

[7] The final question is whether due diligence was exercised to render the Edith seaworthy for the carriage of her sugar cargo from Porto Rico to our Atlantic coast. The vessel's seaworthiness in respect of a sugar cargo juxtaposed to a side port depended wholly on the thoroughness with which the very large side doors or ports of this vessel were bolted in place, so as to make the port for the time being an integral portion of the ship's side. To do this effectively plainly required an excellent gasket, and bolts very thoroughly screwed home. However it was done, it was not done effectively; so much is admitted. There is evidence that the gasket was worn, and it is plain that the actual work of fitting the ports and setting up the bolts was done by the carpenter, who was not produced.

On the importance of producing such a witness or proving his necessary absence, see The Citta di Palermo, supra. On the whole case we are of opinion that due diligence was not exercised in respect of putting in place these inherently dangerous cargo ports.

We conclude that, in respect of her cargo ports and her cargo of sugar, the Edith was not seaworthy in point of fact on entering upon that stage of her voyage beginning at Porto Rico; we find, also, that due diligence was not exercised to make her in that respect seaworthy; further that she in fact encountered no peril of the sea sufficient to account for the losses here admitted; also that the stowage of the sugar against the cargo ports was defective for lack of dunnage; and finally that the fetching away of the tarpaulin wedges in weather such as we find described in the log book was a fault in the care and custody of cargo.

Under the rules of law first above stated, there is considerable choice in assigning reasons for the result reached. It does not seem necessary to sort out or select those which we prefer if all seem to us sufficient. Result is that decree is reversed, with costs, and the matter remanded to the court below, with directions to assess libelant's damages, also with costs.