DUCHE et al. v. THOMAS & JOHN BROCKLEBANK, Limited, et al.

District Court, E. D. New York. August 10, 1929.

No. 9182.

Harry D. Thirkield, of New York City, for libelants.

Lord, Day & Lord, of New York City, for respondents.

CAMPBELL, District Judge. On or about the 26th day of December, 1925, there were delivered to the respondents as common carriers, at Colombo, Ceylon, 1,000 cases of desiccated cocoanuts, in good order and condition, and loaded on board the steamship Makalla, for transportation to the port of New York, there to be delivered in the same good order and condition as when shipped, to the order of Lee Higginson & Co., Boston.

The respondents duly issued five bills of lading covering the said shipment, and these bills of lading constituted the contracts of carriage.

The bills of lading in their general provisions were the same, and each of them contained the following provisions: ,

"1. The carriers are not liable for * * * or perils of the sea. * * *"

"13. Any claim for short delivery of, or damage done to, goods, and all other claims whatsoever, to be made at port of discharge and at no other port; and the goods are shipped and this Bill of Lading granted subject to this express condition, and no claim for damage will be admitted unless notified in writing before the goods are taken receipt of. * * *"

The cocoanuts in question were stowed in No. 2 hold, and on the voyage were damaged by salt water.

The steamship Makalla arrived at the port of New York on February 10, 1926, and discharged this cargo on the pier on February 11th.

The delivery of the portion of the cargo in question was made on February 15th and 16th.

Notations of "wet stain" were in some instances made in the delivery book on receipt, but no notice of claim was filed.

On the voyage across the North Atlantic heavy weather was encountered, as was to be expected during that season of the year, and even more severe weather, but no water found its way into the No. 2 hold of the ship until about 3:45 p. m. on the 29th day of January 1926, when the Makalla shipped an exceptionally heavy sea, the like of which the chief officer could not remember having encountered in his 28 years at sea.

The sea so shipped being peculiar not only in its size but in the fact that, although the wind was blowing and sea was running at the time on the port bow, the sea in question was shipped on the starboard side, smashing No. 1 ventilators and tearing off starboard No. 1 ventilator coaming, lifting off No. 2 port ventilator, tearing up steam pipe casing and smashing ladder, hand rails, forward doors, and bell.

As a result of the lifting of the No. 2 port ventilator, and before it could be plugged, which was speedily done, a large quantity of the water went down into hold No. 2, damaging the portion of the cargo in question with other cargo.

The cargo of the steamship Makalla was not all shipped at Colombo, Ceylon, but some of the cargo was shipped at ports in British India.

On the trial, the proctor for libelant moved to amend the libel so as to incorporate the terms and provisions of the Indian Carriage of Goods by Sea Act.

As libelant desires to raise the question, I will allow the amendment, but hold that the act so pleaded does not affect the shipment in question, as Colombo, where the cargo in question was shipped, is in Ceylon, a British territory, but not in India, and therefore the act in question does not apply, as the shipment in question was not shipped from India.

Libelant makes a point about the difference in the bills of lading of shipments made in India and the shipment in question, and cites Missouri Pacific Ry. v. Larabee Mills, 211 U. S. 612, 29 S. Ct. 214, 53 L. Ed. 352; Primrose v. Western Union Telegraph, 154 U. S. 1, 14 S. Ct. 1098, 38 L. Ed. 883; Union Pac. R. Co. v. Updike Grain Co. (C. C. A.) 178 F. 223, affirmed 222 U. S. 215, 32 S. Ct. 39, 56 L. Ed. 171; American Banana Co. v. United Fruit Co. (C. C.) 160 F. 184, affirmed (C. C. A.) 166 F. 261, affirmed 213 U. S. 347, 29 S. Ct. 511, 53 L. Ed. 826, 16 Ann. Cas. 1047—as holding that the right to the transportation service of the common carrier is a common right belonging to every one alike, and it is the duty of a common carrier to serve the public impartially and without unreasonable discrimination in any respect.

But the cases are not in point because they refer to shipments made within the United States, and I know of no principal of law obligating a carrier to issue identical bills of lading for shipments made from different countries under whose laws different requirements may be made.

That the cases cited are limited to happenings within the United States is shown in American Banana Co. v. United Fruit Co., supra.

The notice of claim clause of the bills of lading is valid, and the "wet stain" notations on the delivery book are not a sufficient compliance with that clause, Anchor Line v. Jackson (C. C. A.) 9 F.(2d) 543, and there is no proof of the giving of any other notice before removal.

The shipment in question was discharged on the 11th of February, 1926, on the pier, and the deliveries were not made until the 15th and 16th days of February, 1926, a period of four or five days, within which the libelants could, if they had made any examination, have found out the condition of the shipment and given notice of claim.

The failure under the circumstances to give such notice prevents a recovery by libelants, and requires the dismissal of the libel; but, even if that were not so, there is presented the other exception of the bill of lading, that of peril of the sea.

Ventilation apertures have to do with care and custody of cargo and not with the management of the ship, which is excused under the third section of the Harter Act (46 USCA § 192). Andean Trading Co. v. Pacific Steam Nav. Co. (C. C. A.) 263 F. 559; The Jean Bart (D. C.) 197 F. 1002; The Edith (C. C. A.) 10 F.(2d) 684; but, if it be shown that the damage to the cargo resulted from a peril of the sea, there can be no recovery.

The rule as to peril of the sea in this circuit is set forth in The Rosalia, 264 F. 285, 288, and The Edith, supra, and the rule of the Fourth Circuit as laid down in the case

of Davison Chemical Co. v. Eastern Transportation Co. (C. C. A.) 30 F.(2d) 862, 1929 A. M. C. 161, has not been followed by our Circuit Court of Appeals.

As stated by Judge Hough in The Rosalia, supra: "The peril which forms a good exception in a bill of lading means something so catastrophic as to triumph over those safeguards by which skillful and vigilant seamen usually bring ship and cargo to port in safety."

Such it seems to me was the sea shipped by the Makalla, on the 29th of January, which lifted the No. 2 ventilator.

█ Libelant contends that it was negligence not to have removed and plugged the ventilators during the heavy weather, but this respondents deny, and say that ventilation was necessary for the cargo.

The ship in question had a raised forecastle which was a protection, and it is to be noted that the ventilator suffered no damage during the heavy weather of the 27th, 28th, or 29th, until this unusually high sea was shipped in the afternoon of the 29th of January, in an unusual manner over the side of the ship opposite to that of the side on which the wind was blowing and the sea running, where it was unexpected a sea would be shipped, and that it was an exceptionally heavy sea the like of which the chief officer of the Makalla could not remember having encountered in his 28 years at sea.

Under the circumstances, I cannot find that the ship was negligent in not having removed and plugged the ventilators; on the contrary, I find that the damage to the shipment in question was caused by a peril of the sea, and that the respondents are relieved from liability for such damage by the failure of the libelants to give the notice of claim and the exceptions in the bills of lading.

A decree may be entered in favor of the respondents against the libelants, dismissing the libel herein with costs.