## THE INDRANI.

(Circuit Court of Appeals, Second Circuit. March 7, 1910.)

### No. 143.

1. SHIPPING (§ 136*)—LIABILITY OF VESSEL FOR INJURY TO CARGO—HARTER ACT.

A shipowner is not deprived of the protection given by section 3 of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]) against liability for injury to cargo resulting from a broken suction pipe because it was not proved that the pipe was inspected at the commencement of the voyage, where it is shown that it was in good condition after the voyage commenced, that the break was new, and it was sufficiently accounted for by the straining of the ship during very rough weather on the voyage.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 492; Dec. Dig. § 136.*

Statutory exemptions of shipowners from liability, see notes to Nord-Deutscher Lloyd v. Insurance Co., 49 C. C. A. 11; Ralli v. New York & T. S. S. Co., 83 C. C. A. 294.]

2. SHIPPING (§ 136*)—LIABILITY OF VESSEL FOR INJURY TO CARGO—FAULT IN "MANAGEMENT OF SHIP."

The tipping of a vessel by the head by the master while discharging cargo for the purpose of examining her propeller, and having nothing to do with the discharge of the cargo, was an act of management of the ship within section 3 of the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]), and, where the owner had complied with the requirements of said section at the commencement of the voyage, neither he nor the vessel is liable for a resulting injury to the cargo.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 492; Dec. Dig. § 136.*

For other definitions, see Words and Phrases, vol. 5, pp. 4318, 4319.]

Appeal from the District Court of the United States for the Southern District of New York.

In Admiralty. Suit by Herman Pauli and Emil Rump against the steamship Indrani. Decree for claimant, and libelants appeal. Affirmed.

Kneeland & Harison (Lawrence Kneeland, of counsel), for appellants.

Convers & Kirlin (J. Parker Kirlin and John M. Woolsey, of counsel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

———————

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WARD, Circuit Judge. The master of the steamship Indrani lying at the Bush Terminal, Brooklyn, discharging cargo, tipped her by the head in order to examine her propeller. This was accomplished by letting sea water through the sea cock and other intermediate valves into No. 1 ballast tank. Cargo was stowed over this tank and also in the forepeak just forward of it. It was subsequently found that 11 feet of water had got into the forepeak and damaged cargo of the libelants. For the purpose of filling and pumping out the forepeak, a cast iron suction pipe runs into it from the engine room. Such pipes are constructed with occasional joints of lead so as to give elasticity and allow them some play in heavy seas. One of these joints was found to be broken in the middle showing a crack to the extent of about half its upper circumference. The water in tank No. 1 passed through this break into the forepeak. Without going into the particulars, it is enough to say that the trial judge found those in charge of the ship negligent in not discovering this leak when No. 1 tank was being filled nor for several days thereafter.

The general seaworthiness of the ship at the beginning of the voyage was established. But the libelants contend that the claimant is not protected by the Harter act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]) against liability for the damage to their goods, because, first, no examination of the suction pipe was proved to have been made within a year; second, that the act of tipping the ship was in no way connected with the cargo, but for the sole benefit of the ship. The trial judge dismissed the libel, and we think he was right in so doing.

On the voyage from Kobe to Shanghai the tank had been filled, and at Shanghai it was pumped out, but no water was found in the forepeak, from which it follows that the pipe was not broken then. After leaving Shanghai the tank was pumped out, and very rough weather with head seas was encountered for the rest of the voyage. There can be no doubt that the pitching and straining of the steamship caused the break. No examination of the pipe could have been made in New York because of the cargo in No. 1 hold on top of the tank. A plain and satisfactory explanation of the break of the pipe on the voyage having been given, and there being uncontradicted testimony that the appearance of the break showed that it was sudden and fresh and not the result of gradual deterioration, we cannot presume that, if an inspection had been made of the pipe before the voyage began, any indications of a coming break would have been discovered.

As to the second contention, it may well be that unnecessarily taking a laden vessel out of the water into a dry dock is such a deviation as will deprive her owners of the benefit of the Harter act for damage to cargo there happening or of the statute giving exemption from liability for fire, as in the case of The Indrapura (D. C.) 171 Fed. 929. But, because the tipping of the ship in this case had absolutely nothing to do with the discharge of the cargo, we think it was an act of management of the ship falling within the third section of the Harter act. The difference, as to the application of sections 1 and 3 of the statute, between an act done for the benefit of the cargo and one done for

the benefit of the ship was under consideration in the case of The Germanic, 196 U. S. 589, 597, 25 Sup. Ct. 317, 318 (49 L. Ed. 610). Mr. Justice Holmes said:

"And this consideration brings to light the limitation of the section, adopted by the court in The Glenochil, and sanctioned by this court in Knott v. Botany Mills, 179 U. S. 69, 73, 74 [21 Sup. Ct. 30, 45 L. Ed. 90], to faults 'primarily connected with the navigation or the management of the vessel and not with the cargo' (1896). Prob. 15, 19. In the case supposed the name given to the pigs of lead is not important in itself, to be sure, but may indicate a difference in the purpose and character of the change of place. If the primary purpose is to affect the ballast of the ship, the change is management of the vessel, but if, as in view of the findings we must take to have been the case here, the primary purpose is to get the cargo ashore, the fact that it also affects the trim of the vessel does not make it the less a fault of the class which the first section removes from the operation of the third. We think it plain that a case may occur which, in different aspects, falls within both sections, and, if this be true, the question which section is to govern must be determined by the primary nature and object of the acts which cause the loss."

The decree is affirmed, with costs.