## THE CITTA DI PALERMO.

(Circuit Court of Appeals, Second Circuit. June 22, 1915.)

No. 304.

1. SHIPPING ☞121—LIABILITY OF VESSEL FOR DAMAGE TO CARGO—DEFECTS IN HULL.

A steamship *held* liable for damage to a shipment of hides from sea water which entered through holes in the plates where the outer ends of rivets were gone; there being no evidence that the rivets were in good condition when the voyage commenced, that the defects were latent and could not have been discovered by a proper inspection, or that they were in fact examined when the vessel was last inspected ten months before.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 225, 449–451, 466; Dec. Dig. ☞121.]

2. SHIPPING ☞132—SUIT FOR DAMAGE TO CARGO—DEFENSES.

A claimant, which relies on the defense that a defect in the vessel which was the cause of damage to cargo was latent and could not have been detected by a careful inspection, must at least satisfy the court that the defect was of such a character.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. ☞132.]

Appeal from the District Court of the United States for the Eastern District of New York.

This cause comes here upon appeal from a decree in favor of libelant, for damages to a lot of salted hides, loaded in December, 1910, on the steamship Citta di Palermo, which upon arrival here were found wet and rotted from contact with and immersion in sea water. The hides were stowed in the forepeak; the vessel encountered very severe weather which continued for several days. On the morning of January 19th, sea water was discovered in the forepeak. The pump was immediately started, but the leak could not be located or the inflow of water stopped, and the compartment remained flooded to the height of the water line until arrival at New York. The vessel being placed on dry dock, it was found that on the starboard side, about on the 13-foot mark and forward of the collision bulkhead the points of two rivets were off; the heads of the rivets on the inside were tight up against the frame and the part of the rivets extending from the head to the point where the frame came against the plate was there. It is not disputed that the water which entered the compartment came through these rivet holes and between the plate and the frame. The opinion of Judge Veeder will be found in 226 Fed. 522.

Converse & Kirlen, of New York City (J. Parker Kirlen and J. M. Woolsey, both of New York City, of counsel), for appellant.

Harrington, Bigham & Englar, of New York City (D. R. Englar, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. [1] The opinion of the District Judge sets forth the facts most fully; it is unnecessary to repeat them here. His conclusions upon the whole case were:

"That claimant has failed to prove that the rivets in question were in good condition at the beginning of the voyage, or that their defective condition was latent. The claimant has also failed to prove that the hand pump, which was found in bad condition at the end of the voyage was in good condition when the voyage began."

We think the condition of the pump is not a matter of importance. There was a sounding pipe, which was in working condition until it broke, after the leak had set the packages of hides afloat and the ship's motion set them thrashing about in the forepeak. The pipe was sounded regularly and from practically nothing it suddenly showed a full forepeak. The damage was then done, the hides were thoroughly wetted. Had a powerful and efficient pump thereafter promptly emptied the compartment and kept it empty, they would nevertheless have rotted before reaching New York.

[2] On the other branch of the case we concur with Judge Veeder. The last time there was an opportunity thoroughly to examine the rivets was when the Citta di Palermo was dry-docked in March, 1910, for her No. three inspection. We do not mean to intimate that, even under the severe requirements of the Supreme Court as laid down in The Caledonia, 157 U. S. 124, 15 Sup. Ct. 537, 39 L. Ed. 644, The Carib Prince, 170 U. S. 655, 18 Sup. Ct. 753, 42 L. Ed. 1181, and other well-known decisions, a vessel must be dry-docked before every voyage and every rivet be separately tested. It is sufficient now to hold that if claimant seeks to rely upon the proposition that there was a latent defect, which thorough and careful inspection could not detect, he must at least satisfy the court that the defect was of such a character.

In the case at bar there are two theories to account for the giving way of the rivets. The claimant insists that although sound and in seaworthy condition they were sheared off by the straining of the vessel in heavy seas. Libelant insists that they were not sound and in seaworthy condition when the vessel sailed on this voyage. As there is no direct testimony as to their condition at that time, the most that can be done is to infer their condition from available testimony. Of all the witnesses who examined the rivets at the end of the voyage, two called by libelant testified that both rivets were corroded in the counter sink down to a point. In view of the circumstances that none of the witnesses called by claimant made an equally close examination of these rivets, and that the rivets themselves were not produced nor the men who handled them when they were knocked out examined, the testimony of the two seems the more persuasive. As to the inspection in March, 1910, we have the general statement that a vessel's "No. three survey" is the most rigorous of all. But there is nothing to show what actually took place on this particular survey; nothing to show that any one then inspected the rivets; no testimony to show that corrosion is so swift that a rivet which responds properly to a test will be corroded to a point by eight months subsequent immersion. The case as it stands on the testimony differs from those on which claimant re-

lies. The Sandfield, 92 Fed. 663, 34 C. C. A. 612; The Exe, 57 Fed. 399, 6 C. C. A. 410; The Frey, 106 Fed. 319, 45 C. C. A. 309; and The Indrani, 177 Fed. 914, 101 C. C. A. 194.

The decree is affirmed with interest and costs.