## THE LEERDAM.

(District Court, E. D. Louisiana. October 26, 1925.)

No. 16964.

1. **Shipping** ⟨⟩132(3)—**Claimant asserting that damage to vessel's cargo was due to perils of sea has burden of proof.**

In libel against steamship for damages to cargo from sea water, claimant asserting that damage was due to perils of sea had burden of proof.

2. **Shipping** ⟨⟩132(5)—**Evidence held insufficient to show damage to cargo resulted from perils of sea.**

Evidence *held* insufficient to show that damage to cargo from sea water was due to perils of the sea, bringing case within provisions of Harter Act (Comp. St. §§ 8029–8035) and exception contained in bill of lading.

In Admiralty. Libel by the Mediterranean & General Traders, Incorporated, against the Dutch steamship Leerdam. Decree for libelant.

Eugie V. Parham, of New Orleans, La., for libelant.

Terriberry, Rice & Young, of New Orleans, La., for respondent.

BURNS, District Judge. Libelant, Mediterranean & General Traders, Incorporated, of New York, claims total damage to cargo consisting of 494 bags of whiting valued at $1,100, shipped in good order in January, 1922, on board the Dutch steamship Leerdam, bound from Antwerp, Belgium, to New Orleans, damaged in transit by sea water flowing from a rivet hole in the forepeak tank into between deck No. 1 and lower hold No. 1 where the whiting was stored. The forepeak tank was filled with water ballast to trim ship in rough weather during the voyage.

Claimant admits shipment in good order, ownership and damage from water flowing through the rivet hole in question, but denies liability, contending that all due diligence was used to make the Leerdam seaworthy and maintain her so, that the missing rivet was forced out of the offending rivet hole as a result of vibration caused by rough weather and heavy seas, and accordingly the damage resulted from perils of the sea; and specially pleads the exception contained in the bill of lading in regard to perils of the sea, and also the provisions of the Harter Act (Act of Feb. 13, 1893 [Comp. St. §§ 8029–8035]); in the alternative, that, if the missing rivet was defective, such defect was latent. And, since claimant had used due diligence to make the vessel seaworthy, there was no liability in view of the exception in the bill of lading and the provisions of the Harter Act.

Claimant's argument proceeds upon the theory that the dislodgment of the rivet from the forepeak tank and bulkhead can be explained in one of two ways: Either by the vibration and motion of the ship in rough weather, or there was a hidden vice or latent defect in the rivet. He cites English and American authorities for definitions of perils of the sea (Marine Act of England 1906, rule 7; Christie v. Craighton [D. C.] 41 F. 62, 63; Ceballos v. The Warren Adams, 74 F. 413, 20 C. C. A. 486; The Newport News [D. C.] 199 F. 971; The Frey, 106 F. 319, 45 C. C. A. 309; T. & M. M. Insurance Co. v. Hamilton Fraser & Co., 6 Asp. Rep. M. C. 200–207), and others to the point that the latent defect in hull, machinery, or appurtenances will exempt claimant's liability under the exception of the bill of lading and the Harter Act.

Libelant cites The Folmina, 212 U. S. 354, 29 S. Ct. 363, 53 L. Ed. 546, 15 Ann. Cas. 748, The Wildcroft, 201 U. S. 378, 26 S. Ct. 467, 50 L. Ed. 794, The Edwin I. Morrison, 153 U. S. 199, 14 S. Ct. 823, 38 L. Ed. 688, The Città di Palermo, 226 F. 529, 141 C. C. A. 285, to the effect that the burden is on claimant to show that the damage was due to causes entitling it to claim exemption under the bill of lading exception and under the Harter Act, and particularly sections 2 and 3 thereof (Comp. St. §§ 8030, 8031).

Libelant, without questioning the Lloyd rating or frequent surveys and inspections shown by certificates and testimony in the record, except to make the point that the inspections were visual only, contends that the claimant did not use due diligence to make the vessel in all respects seaworthy, that the inspections were merely visual, and not made with the proper care, by approved methods with proper instruments, and therefore claimant cannot claim exemption from liability

under the bill of lading or the Harter Act, citing the Southwark, 191 U. S. 1, 24 S. Ct. 1, 48 L. Ed. 65, The Charlton Hall (D. C.) 285 F. 640, The Viking (C. C. A.) 271 F. 801, Compagnie Francaise v. Meyer, 248 F. 881, 160 C. C. A. 639, The R. P. Fitzgerald, 212 F. 678, 129 C. C. A. 214, all to the general effect that mere official and other formal inspections are not conclusive of the fact of seaworthiness.

[1] There is no contradictory testimony to be considered. The record, including the exhibits, may be fairly said to show that the Leerdam, a new ship, was in general good condition with the highest rating, duly inspected and seaworthy in all respects except for the missing rivet, the absence of which, so far as the record is concerned, is wholly unexplained. The theories advanced by claimant's proctor to sustain the defense of due diligence might well be supplemented by others equally probable or possible within the range of imagination. These theories are more or less sustained by the opinions of claimant's witnesses, which no doubt inspired the theories. But the claimant carries the burden of proof. He must show due diligence by competent evidence of convincing weight and sufficiency. Mere theories and opinions do not suffice. The testimony and ship's papers filed in evidence may be fairly summed up as follows:

The Leerdam was a new vessel, had just previously completed her maiden voyage, during which she was damaged by rough weather so as to require general survey and repair. She left Rotterdam on her second voyage (the one to be considered here) after official inspection as well as general visual inspection by her officers before Antwerp cargo was taken. Hold No. 1, where the whiting was stored, was dry and clean, but the forepeak tank was not filled then. She sailed from Rotterdam January 18, 1922, to touch various ports en route to New Orleans, leaving Antwerp January 21, 1922. She left Vigo, Spain, January 28th, arriving next Havana, Cuba, February 13th. It was on this leg of the voyage as she left Vigo that heavy weather was encountered, head seas broke over the vessel, the deck was awash several times, she pitched, tossed, and shivered in the wind and heavy sea. During several days cross or counter swells run and the vibration was strong. To trim ship, the forepeak tank was filled, on or about February 7th. On or about February 10th bilge soundings showed port side 24", starboard 24", against previous average about port side 2", starboard 5". Investigation promptly disclosed the open rivet hole, which was effectively plugged.

[2] This evidence as to the sea and weather condition does not disclose a sufficient stress of weather, the season considered, to justify claimant's defense, nor does the motion and vibration of the ship because of the weather condition satisfactorily account for the absence of the rivet. Whilst the weather was shown to be heavy and the trip rough, there was not that unusual stress or wind velocity or tempestuous condition contemplated by the accepted definitions of perils of the sea, when urged as a defense. At least one of the witnesses testified that during the heavy seas and swells the sun showed occasionally. The ship was otherwise undamaged in hull, tackle, or apparel on reaching Havana. There was no straining of seams, or of other rivets, not even on the forepeak tank itself, which was intact except for the one rivet in question, and this on an interior bulkhead, perpendicular to the keel, just above the bracing afforded by the horizontal staunch deck separating the lower hold from the 'tween deck. The whole record considered, accepting the statements of the witnesses as true, the conclusion is that due diligence is not shown; that the inspections made of this forepeak tank could have but one object and that to determine whether its joints were tight throughout and would hold the volume of water intended by its size. Mere visual inspection would not suffice, considering the hydraulic, pneumatic, or steam and other such tests in use generally for such testing of tanks and other containers of liquid contents. There is no evidence to show that the rivet was defective either in metal composition or workmanship. The rivet itself is not in evidence, nor is there any evidence to show that the bulkhead plates or the angle iron was sprung or strained at or near the rivet hole. There is therefore no necessity for considering the law with respect to latent defects.

Accordingly, there will be a decree in favor of libelant, and the cause will be referred to a Commissioner to find the amount of damages.