## THE MONGOLIAN PRINCE.

District Court, E. D. New York. June 29, 1928.

No. 8531.

1. Shipping ⊝121(2)—Proper tests of tops of ship's double bottom tanks are either pneumatic, hydraulic, or steam.

The proper tests to be applied to tops of double bottom tanks, in order to determine seaworthiness of ship, are either pneumatic, hydraulic, or steam.

2. Shipping ⊝121(1)—Ship should be carefully inspected before each voyage, and proper test made in case of indication of anything wrong.

Ship should be carefully inspected before each voyage, and, in case there is any indication of anything wrong, a proper test should be made, though it is not necessary that as thorough a test be made before the commence-

ment of each voyage as that customarily made every four years.

**3. Shipping ⊜═⊃132(3)—Claimant held not to have sustained burden of showing due diligence to make ship seaworthy, as to damage to carpet wool from sea water.**

In action to recover damage caused by sea water to carpet wool during shipment, claimant *held* not to have sustained burden of showing that due diligence was exercised to make ship seaworthy before and at beginning of voyage.

**4. Shipping ⊜═⊃132(3)—Doubt as to seaworthiness of vessel must be resolved against owner and in favor of shipper.**

In case of doubt as to seaworthiness of vessel, that doubt must be resolved against the owner of the vessel and in favor of shipper.

**5. Shipping ⊜═⊃141(3)—Heavy weather encountered by steamship, merely retarding speed and causing her to strain and pound, held not "peril of the sea," excepted in bill of lading (English Carriage of Goods by Sea Act, 1924).**

Heavy weather encountered by steamship, which was not catastrophic, though retarding speed and causing her to strain and pound, *held* not a "peril of the sea," excepted in bill of lading expressly incorporating English Carriage of Goods by Sea Act, 1924.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Perils of the Sea.]

In Admiralty. Action by Joseph H. Kenworthy and others against the steamship Mongolian Prince, her engines, boilers, etc. Decree for libelants.

Theodore L. Bailey, of New York City, for libelants.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (L. De Grove Potter, of New York City, of counsel), for claimant.

CAMPBELL, District Judge. This is an action to recover the damages caused by sea water to 183 bales of carpet wool, forming part of a shipment of 1,496 bales, from Liverpool, on board the steamship Mongolian Prince, on or about December 19, 1924, arriving at Philadelphia about January 25, 1925. The wool was shipped in good order and condition, and as delivered some of it was in a damaged condition.

The vessel, on sailing from Liverpool, was not fully loaded, as she carried only about 1,000 tons of cargo, 2,300 tons of water ballast in her double bottom tanks, and about 1,500 tons of bunkers, and her draft was 16 feet forward and 21 feet aft. The bales of wool were stowed in No. 1 lower hold, over the No. 1 double bottom tank, which was filled with sea water.

Soon after the vessel left Liverpool she encountered extremely heavy weather, which retarded her speed, and the force of the seas caused her to strain and pound. On January 5, 1925, it was discovered that water was entering No. 1 lower hold from the double bottom. The bilge pumps were started, but the soundings showed no reduction, and it was concluded that the suction pipes were broken.

On the orders of the master, the No. 1 bottom tank was pumped out, and men put into No. 1 hold, who shifted the cargo and attempted to bail the water from the bilges in the No. 1 double bottom tank. To aid this slow process, the chief officer drilled a hole into the bilge in the after end, which allowed the water to flow into the tank, from which it was pumped out.

Clean breaks were found in the lead suction pipes leading from No. 1 bilge, and leaking rivets were found in the bottom and upper part of the tank shortly after the arrival of the vessel at Boston. On conflicting testimony, I find that temporary repairs were not made at Boston, but that, after the discharge of all the cargo, repairs were made at Philadelphia.

The Carriage of Goods by Sea Act of 1924 (English) and the rules annexed thereto, were expressly incorporated in the bills of lading, and in so far as is necessary for consideration in the instant suit, the act reads as follows:

"Article III.

"1. The carrier shall be bound before and at the beginning of the voyage to exercise due diligence to

"(a) Make the ship seaworthy. * * *

"(c) Make the holds * * * and all other parts of the ship in which goods are carried, fit and safe for their reception, carriage and preservation.

"Article IV.

"1. Neither the carrier nor the ship shall be liable for loss or damage arising or resulting from unseaworthiness unless caused by want of due diligence on the part of the carrier to make the ship seaworthy, and to secure that the ship is properly manned, equipped and supplied, and to make the holds * * * and all other parts of the ship in which goods are carried fit and safe for their reception, carriage and preservation, in accordance with the provisions of paragraph 1 of article III."

"2. Neither the carrier nor the ship shall

'be responsible for loss or damage arising or resulting from—

* * * * * * *

"(e) Perils, dangers and accidents of the sea or other navigable waters:

* * * * * * *

"(p) Latent defects not discoverable by ·due diligence."

Libelant contends that the steamship Mongolian Prince was unseaworthy when she sailed from Liverpool: (1) As to bilge pipes. (2) As to her tank tops. (3) As to her trim.

The claimant contends that it used due ·diligence to make the vessel seaworthy, and that she was in fact seaworthy at the time of the commencement of the voyage, and it further contends that the loss suffered by the libelant was due to perils of the sea, which forms one of the exceptions of the bill of lading.

Considering the last contention of the libelant, as to the vessel's unseaworthiness, viz. as to trim, it is clearly shown that this contention was not sustained. We will therefore limit our consideration to the first two specifications of unseaworthiness.

Prior to October 23, 1924, the steamship Mongolian Prince had been in six accidents, four of which were collisions, and two ·groundings, one of which was at Buenos Aires, on August 28, 1924, on which occasion the bottom of the ship received considerable damage, as a grounding causes a great strain to a ship and is apt to cause loose rivets and leakage to the tank top.

In October, 1924, the vessel went into dry ·dock, and, while there is a general statement in the testimony of Chief Officer Curtis and Mr. Wray, Lloyds' surveyor, that a test was made, the surveyor, in specifying what he did, as contained in his journal entries, showed that he tested No. 1 D B tank for shell only, and found it satisfactory. The test for the shell was of the bottom plates of the tank, and not the top.

In the same journal entry he showed that he tested Nos. 3 and 4 D B tanks for repairs, and found them in order, and the same kind of a test should have been made of No. 1 D B tank. No repairs were made to No. 1 D B tank top.

[1] The proper tests to be applied to the tank tops are either pneumatic, hydraulic, or steam. The Leerdam (D. C.) 8 F.(2d) 295, 1925 A. M. C. 1625; The Laconia, 1927 A. M. C. 1514. There is no evidence showing that any of these tests were applied, and, from the nature of the injuries to the shell of D B tank No. 1, it would seem that the

greater part of the injury from the grounding was found at that point.

Two voyages were made by the vessel after October, 1924, and before she started on the voyage in question, but no cargo was carried in hold No. 1 on either of those voyages. No satisfactory test of the lead bilge pipes was shown to have been made at any time before the commencement of the voyage in question, and the test made to determine the condition of the top of the tank before the voyage in question was not such as to show plainly whether it was or was not in a leaky condition.

[2] Libelant's contention that as thorough a test should be made before the commencement of each voyage as that customarily made every four years is not sustained, because that is contrary to custom; but before each voyage an inspection should be carefully made, and if there is any indication of anything wrong a proper test should be made. But such an inspection cannot be made by simply removing the wooden flooring (sometimes called ceiling) at the tank lids or manhole covers, as was done in the instant case, because the wood flooring covered the whole tank, fore and aft, from side to side, and the leaky rivet was under the wood flooring. Neither can it be determined simply by soundings, as in the instant case, whether the top of the tank was in a leaky condition.

[3] It therefore follows that the claimant has not borne the burden of showing that due diligence was exercised to make the ship seaworthy before and at the beginning of the voyage.

[4] Taken in the most favorable light to the claimant there would be a doubt as to the seaworthiness of the vessel, and that doubt must be resolved against the owner of the vessel, and in favor of the shipper. The Southwark, 191 U. S. 1, 24 S. Ct. 1, 48 L. Ed. 65.

[5] The heavy weather encountered by the steamship Mongolian Prince was not catastrophic, and she sustained no injury other than to No. 1 tank and bilge pipes. It is a reasonable supposition that, if the loosening of the rivet had been due to the plunging and straining of the ship, the injury would not have been so limited.

While the evidence shows that it was not discovered until January 5, 1925, that water was entering the lower No. 1 hold from the double bottom, and because soundings taken after the bilge pumps were started showed no reduction, it was concluded that the suction pipes were broken, this does not, in the absence of the sounding book, convince me

that the lead bilge pipes had been broken as a result of the pounding during the heavy weather, because it is to meet that very situation and allow for vibration that the lead pipes are used, at least in part, instead of iron pipes, which are more likely to fracture.

The heavy weather encountered by the steamship Mongolian Prince was not a peril of the sea, excepted in the bill of lading. The Laconia, supra.

A decree may be entered in favor of the libelant, with costs, and the usual order of reference.