## UNTERWESER REEDEREI AKTIENGE-SELLSCHAFT et al. v. POTASH IMPORTING CORPORATION OF AMERICA.

Circuit Court of Appeals, Fifth Circuit. January 7, 1930.

No. 5658.

Geo. T. Cann, of Savannah, Ga. (Anderson, Cann & Cann and George T. Cann, all of Savannah, Ga., on the brief), for appellants.

Wm. Hugh Stephens, Wm. B. Stephens, Edward Brennan, and Walter C. Hartridge, all of Savannah, Ga. (Edward C. Brennan, Stephens & Stephens, and Hartridge & Brennan, all of Savannah, Ga., and Single & Single, of New York City, on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. Part of a shipment of kainit was damaged by water while it was being carried by the steamship Gonzenheim from Brake, Germany, to Savannah. The appellee, the owner of the kainit, libeled the Gonzenheim and obtained a decree for the stipulated amount of the damage. The owner of the steamship appeals, and contends that exceptions contained in the bill of lading, and not those contained in the charter party between the owner and shipper, controlled, that the evidence showed the vessel was seaworthy at the time the voyage began, and that the damage was caused by a peril of the sea.

The voyage was in pursuance of a charter party for the carriage of a cargo from Brake, Germany, to Savannah. That instrument provided for the captain signing bills of lading "without prejudice to this charter party." It provided for the ship being "tight, staunch, strong, and in every way properly fitted" for the voyage, and contained exceptions as to "loss or damage arising from * * * any latent defect in the machinery or hulk, not resulting from want of due diligence by the owners of the ship, or any of them, or by the ship's husband or manager, * * * and all and every danger and accidents of the seas." The bill of lading contained the provision: "The company not to be responsible for * * * unseaworthiness of the ship, even existing at time of shipment, or sailing on the voyage, provided the owners have exercised due diligence to make the vessel seaworthy."

The bill of lading, which operated as a receipt for the goods and as a document of title, did not have the effect of varying the contract between the shipper and the shipowner, evidenced by the charter party. The master was without authority to change or modify the charter by a bill of lading. The G. R. Crowe (C. C. A.) 294 F. 506; The Fri (C. C. A.) 154 F. 333. There is no merit in a suggestion that the appellee was estopped to rely on the charter party. This suggestion is based on the circumstance that the charter party was not mentioned in the original libel, which alleged that the shipment was "in accordance with the valid terms of a certain bill of lading, and there signed and delivered to the shipper by the duly authorized agent of said steamship." By an amendment of the libel the charter party was set up as the contract of carriage. There was nothing to indicate that the appellant, influenced by the original libel's omission of any mention of the charter party, changed its position or course in any way. There is no estoppel where the party asserting it was not influenced or induced to change his position by the act or conduct relied on as effecting an estoppel. The original libel contained no allegation inconsistent with a charter party being the contract of carriage.

The Gonzenheim sailed from Brake on January 20, 1927. Before reaching Southampton she sustained some damage as a result of a collision with another vessel. That damage, which was on the port bow in the vicinity of the hawse pipe, was repaired at Southampton, and the vessel, on January 29, proceeded on her voyage. On February 6 sounding showed about 10 inches of water in bilge No. 2 on the starboard side. On February 8th the hatches were opened, and it was found that water was entering where there were two loose rivets, and that kainit in No. 2 hold was wet. The two loose rivets were next to each other in the skin of the ship on the starboard side, about 90 feet from the vessel's stem, about 8 feet from her bottom, and about 2½ feet aft of the bulkhead at the forward part of No. 2 hold. At that time the openings about the rivets were calked, with the result that thereafter only little water entered. The rivets, which were taken out at Charleston, after the vessel left Savannah, were not offered in evidence.

The evidence did not show that the appearance of the rivets, or of the metal where they penetrated it, indicated that the rivets or the metal they penetrated had been subjected to more strain or pressure than rivets near by were subjected to. There was evidence as to the vessel being dry-docked, examined, and overhauled several times before the voyage in question began, and as to issuance of certificates of her seaworthiness, but there was no evidence that before the voyage began the vessel's rivets were subjected to any test, to determine whether they were or were not tight and in good condition. The vessel had encountered rough weather before the loose rivets were discovered. The weather was such as was reasonably to be expected on the Atlantic in January. It did not impair the speed of the vessel, which was not in danger at any time, and aside from the two loose rivets she was not damaged.

The charter party did not exempt the shipowner from the duty of furnishing a seaworthy vessel at the commencement of the voyage. The Carib Prince, 170 U. S. 655, 18 S. Ct. 753, 42 L. Ed. 1181; The Caledonia, 157 U. S. 124, 15 S. Ct. 537, 39 L. Ed. 644. The burden of affirmatively proving the vessel's seaworthiness at that time was upon the appellant. The Edwin I. Morrison, 153 U. S. 199, 14 S. Ct. 823, 38 L. Ed. 688; The John Twohy (C. C. A.) 279 F. 343. We are not of opinion that that burden was sustained. In the absence of any evidence that before the voyage began the vessel's rivets were subjected to any known test for determining whether they were tight and in good condition, or that the rivets which were found loose were even touched in the course of any inspection made, there is no satisfactory basis for the conclusion that those rivets were in proper condition when the voyage began. The Edwin I. Morrison, supra; The Leerdam (C. C. A.) 17 F.(2d) 586. In the above indicated condition of the evidence, the leaking which resulted in damaging the kainit in hold No. 2 cannot properly be attributed to the rough seas encountered by the vessel, assuming that the weather was such as to constitute a peril of the sea.

The decree is affirmed.