## COMPANIA GENERAL DE TABACOS DE FILIPINAS v. UNITED STATES.
## THE ELKTON.
### No. 362.

Circuit Court of Appeals, Second Circuit.
May 4, 1931.

George Z. Medalie, U. S. Atty., and William E. Collins, Sp. Asst. U. S. Atty., both of New York City, for appellant.

Bigham, Englar, Jones & Houston, of New York City (Henry N. Longley and James N. Senecal, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The libellant shipped a parcel of bagged sugar at Manila and Iloilo in the Philippines upon the respondent's steamer, "Elkton." Part was stowed in the steamer's forehold, and on the outturn at Baltimore and New York was found to have been damaged by fuel oil leaking from the tank top. The sugar had been stowed over the top, and some of the oil had reached it from the rivets and the seam of the tank, but the greater part from a broken vent pipe, leading from the tank through the hold to the deck. This pipe was cased in wood and was broken a few inches above its connection with the tank; at the trial it showed some rust in the threads by which it had been fastened in place, most of which had however probably occurred after it was taken out. The only explanation of the injuries offered by the respondent was that while the ship was lying at Moji, Japan, some of the stevedores had let a strongback fall through the hatch upon the tank, which struck some twenty-five feet abaft the vent pipe.

At Shanghai, a later port of call, a survey was had, and the surveyor reported that though the tank showed no leaks, it should be kept empty or slack, while the ship was homeward bound, and should be tested and repaired, if necessary, at the home port. In New York four hundred rivets were found leaking and about thirty feet of seam, besides the vent pipe just mentioned. The master knew of the report, and perhaps the chief engineer also, and the tank was kept empty from Manila to Honolulu. At that port, however, the engineer for some unknown reason gave orders to fill it, which was done with the resulting damage to the sugar. It did not appear that the fall of the strongback broke the vent pipe, and such evidence as there was indicated the contrary; but equally it did not appear how recently the casing had been removed and the pipe examined, nor did the respondent show what other diligence it had used to examine it.

The defence was that the ship was in all respects seaworthy when she left Manila except for the defective tank; that the master at any rate knew of the injury; and that if he did not tell the chief engineer, or if the engineer was negligent in giving the order

to fill at Honolulu, it was an error of management for which the owner was not liable under section three of the Harter Act (46 USCA § 192). Judge Campbell found that the "Elkton" was not seaworthy, regardless of the knowledge of the master or the engineer, and that the cause of the damage was the tank. From his decree the respondent appealed.

A ship may be seaworthy, though not in all respects fit for her service, when she breaks ground. The Silvia, 171 U. S. 462, 19 S. Ct. 7, 43 L. Ed. 241; International Navigation Co. v. Farr, 181 U. S. 218, 21 S. Ct. 591, 45 L. Ed. 830; The Steel Navigator, 23 F.(2d) 590 (C. C. A. 2); The President Polk, 43 F.(2d) 695 (C. C. A. 2); The Manitoba (D. C.) 104 F. 145. The theory is that if she be well found in hull and gear, but the master and crew know that she is not made ready as she rides, and expect to fit her with what is at hand, when the occasion arises, the owner is discharged; it is an error of management if they fail to do so. But existing unfitness, though it arise only from ill handling of adequate equipment, must be so known at the outset; else she is unseaworthy, not being herself suited for her service, and not carrying a crew properly advised as to her needs. The Schwan, L. R. [1909] App. Cas. 450; Standard Oil Co. v. Clan Line, L. R. [1924] App. Cas. 100. Thus seaworthiness may depend upon the knowledge of the ship's company as to how far she has been in fact made ready. The case at bar is an effort to extend this doctrine to a case where the ship is not sound in hull, on the ground that her fault was known. It is argued that the error is still only one of management, provided of course that, if properly handled, she can be made to serve her purposes.

The gloss thus put forward—without the support of any authority—would extend the doctrine to cases where a crippled ship is turned over to a crew with instructions so to use her as to avoid the consequences. She will be seaworthy if the crew prove duly attentive. For instance, if the rudder be bent, the quartermaster may be instructed to make proper allowance in his helm; if the boilers be weak, the engineer, to keep a low head of steam. We should scarcely suppose that the argument would be pressed to defects which affected the ship's ability to withstand wind and sea, and indeed it is not necessary here to go so far, unless we regard the tank top as part of the shell. There is some evidence to that effect, but we may disregard it, because the same considerations control the seaworthiness of her holds as of her bottom. These were suitable for sugar only if the tank was not filled, that is, in the event that the engine-room took care not to use the ship for her normal purposes.

Section three of the Harter Act (46 USCA § 192) gives a privilege to the owner, an immunity dependent upon the condition that he use due diligence to make his ship "in all respects" seaworthy, within as well as without. When he does, he is excused from what would otherwise be a breach of his contract, a liability in tort, if one choose, in any event a wrong under the maritime law. By hypothesis he stands at fault but for his compliance with the statute, which then imposes upon the shipper the risk of those lapses in duty of the owner's servants for which he is ordinarily responsible. When the owner accepts cargo in an unseaworthy ship, though the defect be such as may be neutralized by care, he imposes on the shipper an added risk; not merely that his servants may fail, in so far as she is sound and fit, but that they may neglect those added precautions which her condition demands. That risk the statute does not impose upon the shipper; he bears no loss until the owner has done his best to remove all risks except those inevitable upon the seas. It makes no difference whether the defect is in shell or hold; with her whole management the owner is charged unless he does his part. In the case at bar it is therefore immaterial whether the engineer knew that he should not fill the tank. If he did, his forgetfulness, or supposition that the oil would not reach the sugar, was a fault, in management it is true, but in the management of a ship which required more care than the owner could exact at the shipper's peril. If the engineer did not know, at least the master did, and his fault is also the owner's. Also it is not necessary to determine whether the strongback broke the vent pipe, and whether the master should have foreseen that possibility as well. If he should, the resulting damage falls within the same class; if not, the respondent made no effort to prove what diligence had been used to discover the break. In either event, it was liable also for so much of the leakage as came from that source.

The facts do not raise a question argued at the bar; whether a ship's unseaworthiness in a respect which has nothing to do with the loss, will deprive the owner of recourse

to the section. The finality of our dictum to the contrary in Hartford & N. Y. Transportation Co. v. Rogers & Hubbard Co., 47 F.(2d) 189, 192, we need not therefore consider, except to observe that it is contrary to In re O'Donnell (C. C. A.) 26 F.(2d) 334; Id., 34 F.(2d) 925 (C. C. A. 2), and to a dictum in The Waalhaven, 36 F.(2d) 706 (C. C. A. 2). Apparently this court has not finally committed itself, and it is not desirable to add any further obiter discussion. Here at any rate the unseaworthiness directly caused the loss, and that disposes of the case.

Decree affirmed.