IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-20722
_____

THYSSEN, INC.; FRANCOSTEEL CORPORATION,

                                        Plaintiffs-Appellees,

                        versus

M/V MED PISA, Etc.; ET AL.,

                                        Defendants,

M/V MED PISA, her engines, boilers,
tackle, equipment, appurtenances,
etc., in rem; NARCISSUS SHIPPING LIMITED,

                                        Defendants-Appellants.
_____

            Appeal from the United States District Court
                for the Southern District of Texas
                          (H-97-CV-758)
_____

                        December 22, 1999

Before JOLLY, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

        This case falls within the grant of original jurisdiction in

admiralty to the federal courts.  The defendant, and now appellant,

Narcissus Shipping Company, as claimant of the M/V MED PISA, seeks

review of the district court's judgment for the plaintiffs, Thyssen

Incorporated and Francosteel Company (collectively, "Thyssen"),

holding that the M/V MED PISA is liable in rem for the damages to

the plaintiffs' cargo.  The defendant argues that the district

---

        [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

court erred as a matter of law in holding that, because bills of lading were issued and the ship sailed with the plaintiffs' cargo, the bills of lading were ratified and became the contract of carriage. Further, the defendant argues that the district court erred in holding that the shipping arrangement was governed by the terms of COGSA[1] and that Thyssen was the rightful holder of a maritime lien against the M/V MED PISA that could be enforced in rem for any damage to its cargo resulting from its transport.

COGSA applies to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade for which the contracts for the carriage of the goods are evidenced by a bills of lading. See 46 U.S.C. § 1300 (West 1999). By its express terms, COGSA does not apply to the terms of vessel charters except to the extent that those arrangements may incorporate its terms. See 46 U.S.C. § 1305 (West 1999). However, if bills of lading are issued where a ship is under a charter party, the parties to that charter party "shall comply with the terms of [COGSA]." Id.; see also Cactus Pipe & Supply Co., Inc. v. M/V MONTMARTRE, 756 F.2d 1103, 1113 (5th Cir. 1985). An exception to this rule exists when bills of lading are issued but remain in the hands of the charterer. In such a situation, the bills of lading are not documents of title to which COGSA applies; rather, they are only a receipt as between the parties to the charter, and the parties' relationships are governed

---

[1]The Carriage of Goods by Sea Act, codified at 46 U.S.C. § 1300 et seq. (West 1999).

2

by the charter party. See The Fri, 154 F. 333, 337 (2d Cir. 1907)(stating that "when the charterer himself ships the goods there bills of lading operate as receipts for them, and also as documents of title which he can negotiate . . . but they do not, as between the shipowner and the charterer, operate as new contracts, or as modifying the contract in the charter party"); Unterweser Reederei Aktiengesellschaft v. Potash Importing Corp., 36 F.2d 869, 870 (5th Cir. 1930). However, if bills of lading are issued and transferred for value to a third party, who is a stranger to the charter party, the bills of lading become the contract for carriage and the relationship will be governed by the terms of COGSA. See The Fri, 154 F. at 336; Cactus Pipe, 756 F.2d at 1113 (holding that when the bills of lading are transferred to a stranger to the charter for value, they become the contract for carriage and the relationship is governed by the terms of COGSA); 70 Am. Jur. 2d Shipping § 691 (1987)(stating that "if bills of lading are issued where a ship is under a charter party, they are required to comply with the Act").

In Cactus Pipe, our court addressed the exact issues raised by the defendant-appellant in a factually analogous situation to the one presented by the instant case. Corinth, a Greek manufacturer of steel tubing, contracted for the shipment of some steel aboard the M/V MONTMARTRE. Cactus Pipe, 756 F.2d at 1106. Upon receipt of the cargo, Delpa Shipping and Transportation Company issued nine bills of lading covering the cargo. Id. Corinth assigned these

bills of lading for value to Cactus Pipe, a stranger to the charter party.  Id.  While in route from Greece to Houston, Texas, some of the cargo was damaged as a result of the unseaworthiness of the vessel, and some of the cargo was lost.  Id.  Cactus Pipe sought to recover under COGSA for damage to, and loss of some of its cargo.  Id.  Addressing the in rem liability of the vessel to Cactus Pipe, we stated:

> [T]he arrangement between Corinth and the vessel was akin to special or private carriage as to which COGSA would not attach unless bills of lading are issued.  Although bills of lading were issued they were not issued either by the vessel owner, Orient, or by one acting with its authority.  Therefore, as we have held above Orient has no liability in personam.  Nonetheless bills of lading were issued and the vessel sailed with the goods on board.  Under those circumstances, Black Letter Law translates Cleirac's historic aphorism "Le batel est oblige a la marchandise et la marchandise au batel"[2] into the settled maritime principle that sweeps away as immaterial any question of the authority of the issuer of the bills of lading to hold the ship liable in rem for loss or damage to the cargo carried.  When cargo has been stowed on board the vessel and bills of lading are issued, the bills of lading become binding contracts of the vessel in rem upon the sailing of the vessel with the cargo.  The sailing of the vessel constitutes a ratification of the bills of lading.  This action gives rise to a maritime lien which is the basis of the in rem recovery.  Even though the vessel is operating under charter party, the lien against the vessel is not affected.  Therefore, the sailing of the MONTMARTRE with

---

[2]Cleirac's "clever phrase" translates into "the mutual obligations flowing from the union of the personified ship and the personified cargo."  Krauss Bros. Lumber Co. v. Dimon S.S. Corp., 290 U.S. 117, 126 (1933).  It historically has been used to describe the reciprocal maritime liens possessed by the owner of cargo upon the ship for the safe custody, due transport, and right delivery of the same, and the lien possessed by the shipowner against the cargo for the freight.  See The Ripon City, 102 F. 176, 181 (5th Cir. 1900).

the cargo of steel pipes aboard constitutes a ratification of the bills of lading.

Id. at 1113 (citations omitted). Thus, the court concluded, "there is in rem liability for loss or damage to the cargo." Id.

Turning to the case before us, it is clear that Thyssen was not a party to any charter agreement. The district court, in its finding of fact number 5, stated that at all relevant times Ocean Pacific Carriers was the charterer of the M/V MED PISA. Further, it is undisputed, and the district court held, that Thyssen was the owner or duly authorized representative of the owners of the steel shipped onboard the M/V MED PISA for which bills of lading were issued. Thus, when the M/V MED PISA set sail with Thyssen's cargo, because the bills of lading were transferred for value to a stranger to the charter party, they were ratified and became the contract for carriage. This is true irrespective of whether the original contract for carriage was for common or private carriage, or whether the issuer of the bills of lading had actual authority to issue them. Consequently, the shipping arrangement was subject to the terms of COGSA. See 46 U.S.C. § 1305 (West 1999).

In sum, we hold that the district court did not err in holding that the bills of lading in this case were the contracts of carriage and that the shipping arrangement was governed by the terms of COGSA. The judgment of the district court is

A F F I R M E D.[3]

---

[3]The plaintiffs' request that this court sanction the

Intervenor's request to participate in the oral argument is denied as moot.

---

defendant due to the frivolous nature of the issues raised on appeal is DENIED.